Frederick Dale TURNER, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–89–00835–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 19, 1993.

Janet Seymour Morrow, Houston, for appellant.

Karen A. Clark, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and CANNON, JJ.

## OPINION ON REMAND

J. CURTISS BROWN, Chief Justice.

This is an appeal from a conviction of capital murder. After finding the appellant guilty, the jury answered "no" to the special issue on future dangerousness. TEX.CODE CRIM.PROC.ANN. art. 37.071(b)(2) (Vernon Supp.1991). Based on that answer, the appellant was sentenced to imprisonment for life. In point of error two, the appellant complains the trial court erred in finding that he failed to make a prima facie case of purposeful discrimination by the state in its exercise of three peremptory challenges. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In our original opinion, we upheld the trial court's finding, and refused to send the case back to the trial court for a *Batson* hearing. *Turner v. State,* No. A14–89–00835–CR, 1991 WL 273144 (Tex.App.—Houston [14th Dist.] December 19, 1991), *vacated,* 827 S.W.2d 333 (Tex.Crim. App.1992). The court of criminal appeals vacated our opinion, and remanded the case to this court for further consideration of the second point of error. *Turner v. State,* 827 S.W.2d 333, 334 (Tex.Crim.App.1992). This court then sent the case back to the trial court for a *Batson* hearing.

At the hearing, the appellant challenged the state's use of peremptory strikes to remove African–American venirepersons, Aquila Rex McGrew, III (McGrew), Rivis Wells Husband (Husband), and Hurley McCann (McCann) from the panel. The trial court

found that the appellant made a prima facie showing of purposeful discrimination as to each. The state then presented its race-neutral reasons for the strikes.

The state called each of the three prosecutors from the appellant's trial to testify. Belinda Hill testified first. Hill began her testimony by giving the reasons the state struck McGrew. She recalled that while McGrew was not opposed to the death penalty in general, he felt that it was applied unevenly to minorities and "underprivileged people." He believed that people with money did not have to worry about the death penalty. In addition, McGrew expressed some reservation about accepting the testimony of an accomplice to the crime. The state considered this unfavorable because it intended to use the testimony of an accomplice. McGrew also indicated that he would have to be convinced that there was no reasonable expectation of rehabilitation before he could answer "yes" to special issue no. 2, which addressed the defendant's future dangerousness. If a psychologist or psychiatrist testified that a person had been rehabilitated, that testimony would probably lead him to answer "no." Hill felt like McGrew would impose a higher burden on the state than provided for by law on this issue. Finally, McGrew indicated that he might have difficulty following the law on confessions. McGrew later said he could follow the law.

Hill next gave the reasons that the state struck Rivis Husband. Husband indicated on her juror questionnaire that she was opposed to the death penalty. She confirmed this sentiment during voir dire. She was opposed to capital punishment because of her religious beliefs. However, after it was explained to Husband that she would not actually vote for the death penalty, and that she would merely answer certain questions with a "yes" or a "no," Husband indicated that she could answer the questions truthfully, and would not answer "no" to avoid a death sentence. Hill felt like Husband became irritated when the state asked her additional questions. She repeatedly stated that she "could answer the questions," even when that answer was nonresponsive to the question asked. Hill felt as if Husband was merely saying what she thought the state wanted to hear. When the trial court refused to strike Husband for cause, the state exercised a peremptory strike to remove her from the panel.

Hill then explained why the state struck Hurley McCann. Initially, McCann indicated that he was unsure about his feelings on capital punishment. He said that he would not feel right in sentencing someone to death. Later, he stated that he could participate in a verdict that would result in the death penalty under appropriate facts. Additionally, McCann indicated that he had some problems with the range of punishment for the lesser included offense of murder. He eventually changed his mind, and stated that he could consider the entire range of punishment. McCann also indicated that the state would have to prove its case beyond all doubt, rather than beyond a reasonable doubt. Additional questioning revealed that McCann would only require the state to prove its case beyond a reasonable doubt. McCann hesitated on many of his answers. He also vacillated on many of his answers, and never took a strong position. McCann also stated that he could not find someone guilty of capital murder if they were a party, and not the principal actor. Although the appellant was charged as the principal actor, the state intended to rely on the testimony of an accomplice. Hill stated that they were concerned that there might be some "finger pointing" during trial. Hill also testified that McCann felt that it was impossible to judge a person's future conduct. We found no such statement in the record. McCann did state that he was not sure if he could answer special issue no. 2 affirmatively, unless there was evidence of other acts of violence, unrelated to the crime at issue. He eventually stated that in an appropriate case, he could answer the question "yes" based solely on the facts of the charged offense.

Hill stated that race was not a factor in any of these peremptory strikes.

The state then called JoAnn Lee to testify. She assisted Hill during the appellant's trial. She first gave the reasons the state struck McGrew. She recalled that McGrew expressed concern over disregarding a confes-

sion that was not voluntarily given. Although McGrew later said he could disregard an involuntary confession, Lee was not confident that he would really be able to do it. McGrew also was unsure about whether he could listen fairly to the testimony of an accomplice witness. Additionally, McGrew stated that he would probably answer special issue no. 2 "no" if someone said the person had been rehabilitated. Finally, Lee felt like McGrew was not giving accurate answers to the voir dire questions, and was merely trying to get seated on the jury.

Next, Lee gave her reasons for striking Rivis Husband. She stated that Husband was stricken because of her adamant opposition to the death penalty. Although Husband vacillated on her positions during questioning by defense counsel, it appeared to Lee that Husband did not understand what she was saying. Husband's religious beliefs seemed so firmly rooted that the prosecution did not think she would be able to follow the law.

Lee then explained why the state struck Hurley McCann. It struck McCann because he changed his mind on so many issues. Initially, he stated that he would not feel right about sentencing someone to death. He later changed his mind. At one point, he indicated that the state would have to prove its case beyond all doubt. He later changed his mind. McCann also stated that he could not convict someone based on the testimony of one witness. He later qualified this by saying that he could, but that it would be very hard. Finally, McCann indicated that he did not think he could convict someone as a party to capital murder.

Lee stated that race was not a factor in the decision to strike any of these potential jurors.

The state then called Andy Tobias to the stand. He was assigned to assist Hill and Lee throughout the appellant's trial, and to aid them in obtaining the death penalty. While Tobias was not sure that he was present during the entire examination of McGrew, he was present during some of the questioning, and he was present when the state struck him. He recalled that McGrew believed that the underprivileged, and the poor minorities received more severe punishment than people with money. The state was concerned that the appellant might fit into the underprivileged category. Tobias also recalled that the appellant volunteered his concern over whether a confession was voluntary.

Tobias then explained why the state struck Rivis Husband. According to Tobias, it was clear that Husband could not give the death penalty. Although she eventually stated that she could, her religious beliefs made her undesirable to the state.

Finally, Tobias gave race-neutral reasons for the strike against Hurley McCann. McCann indicated that he would not feel right about sentencing someone to death. He also stated it would be difficult to convict anyone based on one witness's testimony. Additionally, McCann disagreed with the law of parties. He did not believe that a driver of a getaway car could be found guilty of capital murder. The state was also concerned over McCann's understanding of the word "deliberately." McCann seemed to equate a "deliberate" act with a "premeditated" act. Although the state had evidence that the appellant shot three people within a twenty-four hour period, the shootings did not appear to have been premeditated.

Tobias stated that race was not a factor in the state's decision to strike any of these jurors.

The appellant's attorney briefly cross-examined each of the prosecutors. His brief asserts that the views held by Hurley McCann were shared by white jurors that the state accepted. However, the appellant made no attempt to demonstrate this to the trial court.

■ We are aware that the court of criminal appeals has held that a defendant is not required to request the trial judge to make a comparative analysis of the responses by potential jurors in order to raise such an argument on appeal. *See Young v. State,* 826 S.W.2d 141, 146 (Tex.Crim.App.1991). The *Young* opinion declined to follow dictum from another court of criminal appeals case that suggested a comparative analysis argument must be raised in the trial court. *See Tompkins v. State,* 774 S.W.2d 195, 202–203 n. 6A

(Tex.Crim.App.1987), *aff'd*, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989). The court of criminal appeals has stated that nothing in the *Tompkins* opinion indicates that capital murder trials should be treated differently than non-capital trials. *See Vargas v. State*, 838 S.W.2d 552, 556 (Tex.Crim. App.1992). While this is true, the court of criminal appeals has also recognized that requiring a defendant to raise such an argument in the trial court "may be more appropriately applicable" in capital murder cases. *Young*, 826 S.W.2d at 144. The *Young* opinion notes that voir dire in capital cases may last weeks, with hundreds of questions and thousands of pages of transcription. *Id.* This makes it extremely difficult for both the trial judge and the parties to recall discrepancies in the voir dire of the various veniremembers that were questioned individually. *Id.*

The present case involves over forty volumes of voir dire testimony. On August 20, 1992, we ordered the trial court to hold a *Batson* hearing. The hearing was held on January 8, 1993. The appellant had ample opportunity to prepare a comparative analysis argument which he could have presented at the *Batson* hearing. We believe that this is not an unreasonable requirement in capital murder cases. Following the language in *Tompkins* and *Young*, we will not conduct such an analysis for the first time on appeal.

When a *Batson* issue arises, the trial judge acts as the finder of fact. A reviewing court may not substitute its judgment for that of the trial judge, if there is sufficient evidence to support the judge's findings. Viewed in the light most favorable to the trial court's findings, we believe that the race-neutral explanations given by the state for striking these jurors are supported by the record. The trial court's finding of no purposeful discrimination was not clearly erroneous. *See Whitsey v. State*, 796 S.W.2d 707, 726 (Tex.Crim.App.1989) (on rehearing).

Accordingly, we overrule the appellant's second point of error, and affirm the conviction.