# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-DP-00763-SCT

*LINNOX MARCUS WALKER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/23/1997 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID L. WALKER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE |
| DISTRICT ATTORNEY: | JAMES M. HOOD, III |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - DIRECT APPEAL |
| DISPOSITION: | CONVICTION OF CAPITAL MURDER |
| | AFFIRMED. REMANDED FOR NEW SENTENCING HEARING-5/9/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/30/2002 |

**EN BANC.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1. Linnox Marcus Walker ("Walker") was convicted in Marshall County Circuit Court of capital murder and sentenced to death. Walker appealed his conviction alleging, inter alia, that the circuit court erred in denying his challenges to the exercise of peremptory strikes of prospective jurors by the State. This Court affirmed the conviction, but remanded the case to the trial court for the purpose of conducting a hearing as mandated in **Batson v. Kentucky**, 476 U.S. 79, 106 S. Ct. 1712, 90 L.Ed.2d 69 (1986), and for a new sentencing hearing.

¶2. The trial court conducted a **Batson** hearing and at the conclusion determined that the exercise of peremptory strikes did not demonstrate that the prosecution had engaged in purposeful discrimination as

prohibited by *Batson*.

## PROCEDURAL HISTORY

¶3. Linnox Marcus Walker was indicted by the Grand Jury on July 30, 1996, for the murder of Bobby Dean Henderson, while engaged in the commission of the crime of robbery. During the peremptory challenge phase of the trial, Walker made a *Batson* motion raising the issue of racial discrimination in the State's exercise of peremptory strikes. This motion was raised after six of the first seven peremptory challenges exercised by the State were against African-Americans. Walker renewed his motion after the peremptory phase was concluded noting that the State had used seven out of nine peremptory strikes on African-Americans. The trial judge overruled this motion without requiring the State to offer race-neutral reasons for the strikes. Ultimately, Walker was found guilty of capital murder and sentenced to death May 23, 1997.

¶4. Walker timely filed an appeal. On May 27, 1999, this Court rendered its decision in *Walker v. State*, 740 So.2d 873 (Miss. 1999). We determined that an inference of racial discrimination was presented by Walker and that the trial court erred in failing to conduct a *Batson* hearing pursuant to *Thorson v. State*, 653 So.2d 876 (Miss. 1994). Accordingly, the case was remanded to the trial court for a *Batson* hearing and for a new sentencing hearing.

## FACTS

¶5. On March 8, 2000, a *Batson* hearing was conducted at the trial court. District Attorney James M. Hood, III, and Assistant District Attorney Ralph H. Doxey, representing the State, offered the following race-neutral reasons for the strikes:

### Juror No. 2 - Marvin Glen Johnson

BY MR. HOOD: ...Marvin Glen Johnson. Mr. Johnson, black male, and the reason that we struck him for cause were - I - if the court will allow me to do so. I will state the reasons that I wrote down . . . So my reason for striking juror number 2, Marvin Glen Johnson when the Court asked the venire to look at the victims family and see if they could identify any of those members if they knew any of them that this man was sitting on number 12. He was on the front row. I happened to notice that he wouldn't even look at the victim's family. He states that he would hold us to a hire [sic] standard of proof since it was a death penalty and it was neutral on the death penalty. The transcript page 143 and 144 we challenged for cause and we stated our reasons that we would stand on those reasons stated on that page in the transcript. We again challenged juror number 2 which is in the transcript page 153 and I would like for Mr. Doxey to state the reasons what his notes reflect.

BY MR. DOXEY: Your Honor, my same three reasons that Jim has just stated. That he would hold us to a hire [sic] standard. He actually said he would hold us to more than a reasonable doubt on guilt phase and that is part of the reason we struck that juror.

### Juror No. 4 - Joseph Lee Dunlap

BY MR. HOOD: On our second strike we struck juror number 4. His name is Joseph Lee Dunlap junior [sic]. Mr. Dunlap was a black male. We attempted to strike him for cause and on transcript at page 144 and 145. Also he gave statements in the transcripts page 133 and page 131. Now our

reason for attempting to strike for cause, I believe it was in response to defense counsels [sic] question that he wouldn't want to be held up in a tight room with a lot of people meaning back there in the jury room. And he also objected to us making a deal as I believe as he called it with the co-defendant in exchange for his testimony. And I believe he also stated something to the effect that it would require DNA and that type of evidence was needed and therefore would have held us to a higher standard of proof beyond a reasonable doubt. And also, had that at 11:36 he was asleep. I would ask Mr. Doxey to state the reasons or [sic] on juror number 4.

BY MR. DOXEY: Your Honor, my notes reflect that Mr. Dunlap said that he was death penalty neutral. That he was repeatedly yawning. He was sitting on the front row and repeatedly yawning and not listening to his honor. But this may be the same time but he was asleep during voir dire. Juror number 43 Bumpas at 1:35 he started a long staring at the floor and not paying attention again as 2:07 he was staring at the floor and not listening to questions. He felt both defendants should be tried together. He has two children and not married to the mother and he is not a full-time employee. His employee is temporary.

### Juror No. 6 - James Thomas Hurley

BY MR. HOOD: Mr. Hurley is a white male and we attempted to strike him for cause at transcript page 145 because he would require us to prove a higher standard of proof. That is all the notes I had on him. He was a white male. That was juror number 6.

BY MR. DOXEY: Just one other reason Your Honor, he had some problem with the judicial system. He had a small daughter that was a victim of a rape and so that was an additional reason.

### Juror No. 7 - Earline Johnson Wilkins

BY MR. HOOD: Our next challenge being States [sic] 4th challenge was on juror number 7. Earline Johnson Wilkins. Mrs. Wilkins is a black female. I have in my notes at 11:25 she went to sleep. That she was a nurse. Which prosecutors interpret in my experience with a nurse I put on in a death penalty case she hung the jury up on death phase and that was a case in Lafayette County. Being that she is a care giver and her duty is to saves [sic] peoples [sic] lives. It's the States opinion that she would tend more to give the defendant a second chance and she also questioned the entire judicial system. And I ask Mr. Doxey for comments on juror number 7.

BY MR. DOXEY: That is what my notes reflect, Your Honor, on that one.

### Juror No. 16 - Joseph Ambrose

### Juror No. 21 - Stanley Ambrose

BY MR. HOOD: ...The next juror that we exercised a challenge on was juror number 16 Joseph Ambrose. That was our fifth strike. He is a black male. I believe the transcript I notice at page 140 that he was related to juror number 21 who is also Ambrose and the name Stanley Ambrose. We struck juror number 16 because he was kin to this Stanley Ambrose juror number 21. The law enforcement officer informed us that these fellows were kin to a prior criminal defendant in Marshall County by the name of George Ambrose. We had prosecutes [sic] him before. And also this man was wearing an earring with the statements that I had in my notes that I had on it. I will ask Mr.

Doxey for comments from him.

BY MR. DOXEY: Yes, Your Honor, and one additional this defendant was not married and had children by a woman he wasn't married to or living with them.

BY MR. HOOD: That cause number on George Ambrose whose a relative of according to the law enforcement officers. We looked up the cause number and it was M K, Marshall County 97-070. So 97 was the same year I believe this case was tried. We had prosecuted an Ambrose and that was our reason for striking him. The next juror that we exercised the challenge on was juror number 21, Stanley Ambrose. That was our 6th Strike and he is a black male and there again related to this George Ambrose and number 16 at page 120 of the transcript. They both agreed that they were related. Juror number 6 and 21. And for the reasons we stated on Joseph Ambrose he is related to George Ambrose who was prosecuted by our office. I would ask Mr. Doxey for comments on Mr. Ambrose.

BY MR. DOXEY: Have nothing further on my notes on that strike.

### Juror No. 22 - Rodney Ivery Crane

BY MR. HOOD: Our next challenge was juror number 22, Rodney Ivery Crane. He is a black male that was juror number 22 that was our 7th strike . . .

My comments on juror number 22 are that we tried him for cause page 146 of the transcript and I think that page 134 and 131 he stated on page 134 of the transcript that he didn't want to get in a tight room with the other jurors and also he objected to us making a deal with co-defendant to testify. I believe at page 146 of the transcript reads would that be an appropriate preemptory [sic] challenge but he didn't think it was sufficient for cause. I will ask Mr. Doxey if he had any comments on juror 22.

BY MR. DOXEY: Yes, Your Honor, he said he would hold us to a higher standard and thought both defendants should be tried together. One of our witnesses potential witnesses, Robert Burk, who was a law enforcement office at the time this crime occurred, he said he would believe Robert Burk more than anyone else we put on there and probably believe law enforcement more and he didn't want to be locked up for a long time in the jury room.

### Juror No. 29 - Jerome Boyce

BY MR. HOOD: Our next juror we challenged was juror number 29 Jerome Boyce. He was a black male. He was the 9th juror. He was strike number 8 by the State. We challenged Mr. Boyce on page 147 because he said he didn't want to be cooped up in a tight room with other jurors and I have a note here that he stated that he was a jail house minister and his comments were on page 134 of the transcript. I will ask Mr. Doxey if he was a comment.

BY MR. DOXEY: Yes, Your Honor, Mr. Boyce stated that he thought everyone deserved a second chance. He knew Robert Burk. He has been involved with law enforcement. He had his head down repeatedly. He was looking out the door when the judge was explaining the death penalty. He had his eyes closed and one time he had his eyes closed enough that he was asleep and one of the keys, hand written notes. One of my keys he thought both defendants should be at trial but I didn't have that on

the other key.

**Juror No. 36 - Brenda Lee Dockery**

BY MR. HOOD: The next strike we exercised is on juror number 36, Brenda Lee Dockery. I didn't have a note whether she may have been a black female. I believe she was a black female and on the transcript page 131 she said that she didn't like the idea of us making an agreement of a lesser sentence of a co-defendant. I will ask Mr. Doxey if he had any comments about her.

BY MR. DOXEY: Yes, Your Honor, this particular juror shown by her juror card is unemployed. Not employed. She is not married. She has three children at home and by striking her we get to juror number 37 who we took. Who was two years of college and is employed and the State thought that particular juror would be a better juror than number 36.

¶6. The State maintains that all of the reasons given by the prosecution are race-neutral and that there is no violation of *Batson*. The State argues that the trial court's finding is entitled to great deference. Additionally, the State argues that Walker has demonstrated nothing that can overcome the presumption that the ruling of the trial court is consistent with the weight of the evidence.

¶7. The only rebuttal offered by Walker at the *Batson* hearing was that it was a questionable practice to allow peremptory strikes to be based on a juror's being asleep during voir dire. The record reveals that Walker's attorney, David L. Walker, stated:

BY MR. WALKER: Your Honor the one concern I have is the reason used several times by the state about a perspective juror being asleep. You know, that is that is a very subjective standard if a person closed his or her eyes for a moment or two could that be characterized as asleep or not. It's going to come down to one day having a video camera in a court room to video the venire to see if any are asleep or not. That gives me some concern there. The other reasons given by the State, Your Honor, the Supreme Court has dealt with this issue many times and we would just ask the court to determine if these reasons are some that had been previously accepted by the Mississippi Supreme Court.

¶8. Walker concedes that prospective jurors may appropriately be struck on the following bases: (1) when a relative has been charged with a crime (*see Magee v. State*, 720 So.2d 186 (Miss. 1998)); (2) when prospective jurors have scruples against the death penalty (*see Stringer v. State*, 500 So.2d 928 (Miss. 1986)); and (3) when a potential juror was asleep during voir dire (*see Walters v. State*, 720 So.2d 856 (Miss. 1998)).

¶9. Walker maintains that the record is silent as to the State's calling the trial court's attention to the alleged fact that prospective jurors were asleep so that corrective action could be taken and a record made of this fact. Additionally, Walker argues that the State's failure to conduct individual voir dire of the jurors who allegedly were asleep must weigh against the State in evaluation of its proffered reasons for exercising peremptory challenges of those venire members during the *Batson* hearing. He further argues that a trial judge should give a clear and reasonably specific explanation for his ruling on peremptory strikes when determining if an explanation is sufficiently race-neutral.

**STANDARD OF REVIEW**

¶10. This Court applies the following standard of review on appeal from the circuit court's findings under ***Batson***:

> We give great deference to the trial court's findings of whether or not a peremptory challenge was race-neutral. . . . Such deference is necessary because finding that a striking party engaged in discrimination is largely a factual finding and thus should be accorded appropriate deference on appeal. . . . Indeed, we will not overrule a trial court on a ***Batson*** ruling unless the record indicates that the ruling was clearly erroneous or against the overwhelming weight of the evidence. . . .

***Thorson v. State***, 721 So.2d 590, 593 (Miss. 1998).

## DISCUSSION

### WHETHER THE TRIAL COURT'S *BATSON* RULING THAT THE STATE OFFERED SUFFICIENT RACE-NEUTRAL REASONS FOR STRIKING POTENTIAL JURORS WAS APPROPRIATE AND SHOULD BE AFFIRMED.

¶11. Under ***Batson***, when a defendant shows that he is a member of a cognizable racial group and that the prosecution has exercised peremptory challenges to remove from the venire, members of the defendant's race, an inference arises that the prosecutor has used that practice to exclude the venire men from the petit jury on account of their race. ***Batson***, 476 U.S. at 96, 106 S.Ct. at 1722-23, 90 L.Ed.2d at 97-88. Once this inference, which is tantamount to a prima facie case, is established, the prosecutor is required to announce race-neutral reasons for the exclusion of those persons from the venire. ***Stewart v. State***, 662 So.2d 552, 557-58 (Miss. 1995). *See also* ***Batson***, 476 U.S. at 97, 106 S.Ct. at 1712. Additionally, the defendant is allowed to rebut the reasons which have been offered by the State. ***Bush v. State***, 585 So.2d 1262, 1268 (Miss. 1991). However, if the defendant offers no rebuttal, the trial court is forced to examine only the reasons given by the State. ***Id***. It is necessary for the trial court to make an on-the-record, factual determination, of the merits of the reasons cited by the State for its use of peremptory challenges against potential jurors. ***Hatten v. State***, 628 So.2d 294, 298 (Miss. 1993).

¶12. When a ***Batson*** issue arises, the trial judge acts as the finder of fact. ***Berry v. State***, 703 So.2d 269, 295 (Miss. 1997)(citing ***Turner v. State***, 861 S.W.2d 36, 39 (Tex. Ct. App. 1993)). The race neutral explanations must be viewed in the light most favorable to the trial court's findings. ***Id***. Trust is placed in a trial judge to determine whether a discriminatory motive drives the reasons given for striking a potential juror. *See* ***Webster v. State***, 754 So.2d 1232, 1236 (Miss. 2000). The determination of discriminatory intent will likely turn on a trial judge's evaluation of a presenter's credibility and whether an explanation should be believed. ***Batson***, 476 U.S. at 98, 106 S.Ct. 1712. Thus, trial courts are given great deference in their findings of fact surrounding a ***Batson*** challenge. ***Lockett v. State***, 517 So. 2d 1346, 1350 (Miss. 1987). One of the reasons the trial court is afforded such deference when a ***Batson*** challenge is raised is because the demeanor of the attorney making the challenge is often the best evidence on the issue of race neutrality. ***Webster v. State***, 754 So.2d at 1236. On appellate review, the trial court's decision is accorded great deference and will be reversed only when such decision is clearly erroneous. ***Lockett v. State***, 517 So.2d at 1349-50.

¶13. This Court has previously offered guidance to the trial courts by approving a list of race-neutral reasons accepted by other jurisdictions. *See* ***Lockett***, 517 So.2d at 1356-57. Among these are the following: living in a "high crime" area, body language, demeanor, prosecutor's distrust of the juror,

inconsistency between oral responses and juror's card, criminal history of juror or relative, social work and other types of employment, and religious beliefs. *Id.* This Court was careful, however, to point out that this list was not exhaustive. *Id.* at 1352.

¶14. In the case sub judice, the trial court noted that during the *Batson* hearing, it reviewed notes made during the voir dire process and found them to be consistent with the explanations offered by the State which formed the bases for the peremptory strikes. The trial court correctly noted that the State's reasons did not need to rise to the level of justification required for a challenge for cause. *See Harper v. State*, 635 So.2d 864, 867 (Miss. 1994).

¶15. Most of the reasons offered by the State can be found on the *Lockett* list. Furthermore, Walker conceded that prospective jurors may be struck for having scruples against the death penalty and for being asleep during voir dire. Because the record indicated that the trial judge undertook an evaluation of each reason given for striking each potential juror, the requirements mandated by *Hatten* were met.

¶16. The only additional argument made by Walker concerns the "subjectiveness" of determining whether a prospective juror is asleep. Again, the record is clear that the trial judge made a sincere, bona fide effort to properly weigh and examine the race-neutral reasons cited by the State. Specifically, the trial court determined that Walker did not prove any purposeful discrimination as required under the law. This finding is not clearly erroneous or against the overwhelming weight of the evidence.

## CONCLUSION

¶17. The trial court did not err in finding the State's reasons facially race-neutral. As no discrimination was found in the *Batson* hearing, the conviction of capital murder is affirmed. However, the case is remanded to the trial court to conduct a new sentencing hearing pursuant to *Walker v. State*, 740 So.2d 873 (Miss. 1999).

¶18. **CONVICTION OF CAPITAL MURDER AFFIRMED. REMANDED FOR NEW SENTENCING HEARING.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, DIAZ, EASLEY AND CARLSON, JJ., CONCUR.**