726 So.2d 189 (1998)
Randall ROBINSON a/k/a Randall Lee Robinson, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 96-KA-01414 COA
Court of Appeals of Mississippi.
November 24, 1998.
*190 William B. Sullivan, Laurel, for Appellant.
Office of the Attorney General by Scott Stuart, for Appellee.
Before THOMAS, P.J., and KING and SOUTHWICK, JJ.
THOMAS, P.J., for the Court:
¶ 1. Randall Robinson appeals his conviction of aggravated assault raising the following issues as error:
I. THE LOWER COURT ERRED IN ALLOWING THE STATE TO POSE HYPOTHETICAL QUESTIONS TO THE JURY
II. THE LOWER COURT ERRED IN THE MANNER IN WHICH THE JURY WAS SELECTED
*191 III. THE LOWER COURT ERRED IN REFUSING TO REQUIRE THE STATE TO GIVE NON RACIAL REASONS FOR CHALLENGING JURORS
IV. THE LOWER COURT ERRED IN NOT PROPERLY INSTRUCTING THE JURY
V. THE LOWER COURT ERRED IN ALLOWING USE OF THE DEFENDANT'S YOUTH COURT RECORD IN SENTENCING THE DEFENDANT
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. During the midnight hours of June 2, 1995 Clifton Curtis Jordan was shot in the lower left leg with a SK38 semi-automatic rifle by Randall Robinson in the parking lot of a store named Jo-Jo's in Waynesboro, Mississippi. Earlier that night Jordan and several others were at a dance and pool hall named Eddie's Pool Club. Robinson was also at Eddie's that evening. A brief encounter of words between Jordan and Robinson occurred at Eddie's and ended without an altercation between the two. Robinson and Jordan continued their night at Eddie's without further incident. Testimony indicated Robinson had previously dated Jordan's cousin and that he and Robinson were acquainted with one another. At around midnight Eddie's began closing for the night and many of the patrons went to Jo-Jo's, including Jordan and Robinson. Testimony at trial indicated it was customary for patrons to go to Jo-Jo's after Eddie's closed.
¶ 4. Jordan and his party went to Jo-Jo's and Robinson immediately pulled his vehicle in behind Jordan's vehicle. Jordan went to another vehicle to have a conversation with Randall McFarland, a friend, and upon returning to his vehicle words again were exchanged between Jordan and Robinson. At this point Robinson pulled the SK38 from his car and pointed it in the direction of Jordan. As Jordan turned to flee, Robinson fired the SK38, striking Jordan in the left calf which knocked him to the ground. Robinson then walked over to the injured Jordan, placed the SK38 to Jordan's chest and repeatedly pulled the trigger, however, due to reasons unknown and fortunately for Jordan, the rifle failed to discharge. A store security guard disarmed Robinson and Robinson fled in his vehicle.

ANALYSIS

I.

THE LOWER COURT ERRED IN ALLOWING THE STATE TO POSE HYPOTHETICAL QUESTIONS TO THE JURY
¶ 5. Robinson contends the trial court erred in allowing the State to pose hypothetical questions to the jury during voir dire. Robinson cites no cases as authority on this issue. The only authority cited in Robinson's brief on this issue is a recitation of URCCC 3.05 which states in pertinent part, "No hypothetical questions requiring any juror to pledge a particular verdict will be asked." Based upon this rule, Robinson maintains as error the following questions asked by the State during voir dire:
Q. Now, the questions that I have to ask are these. Is there anything about that set of facts, if we, assuming that we're able to prove to you those facts that I just related to you and convince you beyond a reasonable doubt that those are the facts, is there anyone here who would have a difficulty returning a verdict of guilty on the basis of those kinds of facts if the law is what I stated to you? Anyone?
(NO RESPONSE)
Q. Would any of you think that under a set of facts such as that that you would have some difficulty for some personal reason of returning a verdict of guilty?
(NO RESPONSE)
Q. Do any of you feel that you would have difficulty following the law, if it is what I stated to you on the basis of those facts?
(NO RESPONSE)
¶ 6. The standard of review for determining the impropriety of a question is abuse of discretion. Harris v. State, 532 So.2d 602, 606 (Miss.1988). Mississippi case law prohibits attorneys from attempting to elicit promises from the jury promising that under a hypothetical set of circumstances, *192 they will return a specific verdict. West v. State, 553 So.2d 8, 21 (Miss.1989). After a careful review of the record we are not persuaded by Robinson's argument. It is readily apparent from the record that the hypothetical questions posed by the State were not attempts to elicit promises to vote one way or another. A hypothetical question does not create per se reversible error where the prosecutor does not "specifically request a verdict during voir dire." Holland v. State, 705 So.2d 307 (¶ 116) (Miss.1997), (citing Stringer v. State, 500 So.2d 928, 938 (Miss. 1986)). The hypothetical questions posed by the State were proper and we find no error in the trial court's exercise of discretion. This assignment of error is without merit.

II.

THE LOWER COURT ERRED IN THE MANNER IN WHICH THE JURY WAS SELECTED
¶ 7. Robinson assigns error to the trial court's method of jury selection. Robinson's only claim rests on a vague recitation of Rule 4.05(2) of the Uniform Rules of Circuit and County Court without any additional argument or citation to authority in support thereof. Robinson maintains a full panel of accepted jurors was not tendered to him after the State exercised its first round in the jury selection. Robinson is incorrect and misinterprets the selection procedure outlined in URCCC 4.05(2). Under URCCC 4.05(2) a full panel of jurors, meaning twelve, are tendered by the State after electing to exercise any peremptory strikes. This procedure was followed precisely during the selection process. It is clearly evident from the record that Robinson was tendered jurors: 2, 3, 4, 6, 7, 8, 9, 12, 13, 14, 15, and 18, a total of twelve from which to exercise his peremptory strikes in the first round of jury selection. We see no need to address this issue further, it is without merit.

III.

THE LOWER COURT ERRED IN REFUSING TO REQUIRE THE STATE TO GIVE NON RACIAL REASONS FOR CHALLENGING JURORS
¶ 8. Robinson maintains that the trial court erred in failing to require the State to provide non racial reasons for the use of peremptory strikes against three jurors. In support of Robinson's contention, he cites to Edmonson v. Leesville Concrete, Co., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (holding Batson criteria applicable to private litigation in a civil case) and Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (holding that racial identity between the objecting defendant and the excluded jurors does not constitute a relevant precondition for a Batson challenge), neither of which are applicable to the circumstances and issues of the case at hand. We note that these are the only two cases Robinson cites as authority in briefing his allegations of error.
¶ 9. The circumstances of Robinson's plight involve neither a civil litigation case, as addressed in Edmonson, nor issues of defendant/juror racial identity as were at issue in Powers. Robinson was indicted and tried on a charge of aggravated assault, a criminal matter. Robinson is black as were the three jurors stricken by the State. However, despite Robinson's failure to cite proper authority we now turn to his assignment of error.
¶ 10. In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that the use of peremptory challenges in a racially discriminatory manner is unconstitutional and announced a three-part process for resolving objections. First, the defendant must establish a prima facie case of purposeful discrimination in the jury selection process. Berry v. State, 703 So.2d 269 (¶ 94) (Miss.1997) To establish a prima facie case the defendant must show: 1) that he is a member of a "cognizable racial group," 2) that the prosecutor has exercised peremptory challenges toward the elimination of veniremen of his race, and 3) that facts and circumstances raised an inference that the prosecutor used his peremptory challenges for the purpose of striking minorities. Id.; Conerly v. State, 544 So.2d 1370, 1372 (Miss. 1989) (citing Batson, 476 U.S. at 96-97, 106 S.Ct. 1712). In addition, under Powers a *193 successful Batson challenge does not hinge on the defendant and the challenged juror being of the same race, white defendants also have standing to challenge discriminatory peremptory strikes.
¶ 11. Second, upon a successful prima facie showing of purposeful discrimination in the jury selection process, the striking party then has the burden to provide a racially neutral explanation for the challenged strike. Batson, 476 U.S. at 97-98, 106 S.Ct. 1712. The defendant then has the right to rebut the racially neutral explanation. Bush v. State, 585 So.2d 1262, 1268 (Miss.1991). Finally, the trial court must make a finding of fact to determine if the defendant has proved purposeful discrimination. Batson, 476 U.S. at 98,106 S.Ct. 1712.
¶ 12. We accord great deference to our trial judge's factual findings relative to a prosecutor's use of peremptory challenges on minority persons and will not reversed their findings unless they appear clearly erroneous or against the overwhelming weight of the evidence. Berry, 703 So.2d at 294(¶ 96); Lockett v. State, 517 So.2d 1346, 1349-50 (Miss.1987); Willie v. State, 585 So.2d 660, 672 (Miss.1991). When a Batson challenge is made, the trial judge sits as the fact finder. As the reviewing Court, we may not substitute our judgment for that of the trial judge, if there is sufficient evidence to support the judge's findings. Berry, 703 So.2d at 294(¶ 99) (citing Turner v. State, 861 S.W.2d 36, 39 (Tex.Ct.App.Houston (14 Dist.) 1993)).
¶ 13. In the instant case the trial court determined Robinson failed to make a prima facie showing of purposeful discrimination in the jury selection process. Robinson and Jordan were both black. During the selection process the prosecution exercised peremptory strikes on jurors: number one, a black; number sixteen, a black; number seventeen, a white; and number twenty-five, a black. In establishing a prima facie case of purposeful discrimination Robinson clearly meets prongs one and two; as Robinson is black and three of the four stricken veniremen were members of the same race as himself. However, Robinson fails in establishing his prima facie case under the third prong. Under the third prong, we must consider the facts and circumstances of the jury selection process to determine whether an inference of purposeful peremptory strikes against minorities was used by the prosecution.
¶ 14. It is readily apparent from the record that the prosecution exercised peremptory strikes on both white and black veniremen, it did not strike only black veniremen, and only four of its six peremptory strikes were used. In addition, the record reflects a jury of seven whites and five blacks were ultimately seated as Robinson's peers. In this respect, Robinson has failed to make out a prima facie showing that "the facts and circumstances raised an inference that the prosecutor used his peremptory challenges for the purpose of striking minorities." Conerly, 544 So.2d at 1372. Therefore, we cannot say that the trial court was clearly erroneous in overruling Robinson's Batson challenge.

IV.

THE LOWER COURT ERRED IN NOT PROPERLY INSTRUCTING THE JURY
¶ 15. Robinson maintains the trial court erred in failing to properly instruct the jury. Robinson contends that defense instructions D-6, D-14, D-10, and D-17 were improperly denied, thus preventing him from presenting any instruction as to his theory of the case.
¶ 16. The standard of review for reviewing objections to the trial court's denial of Robinson's proposed instructions is well settled:
This Court's standard of review in reviewing jury instructions is as follows: In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.
Coleman v. State, 697 So.2d 777, 782 (Miss. 1997); Collins v. State, 691 So.2d 918 (Miss. 1997) *194 (citing Hickombottom v. State, 409 So.2d 1337, 1339 (Miss.1982)). With that in mind we now turn to Robinson's assignment of error.
¶ 17. Robinson maintains two theories of defense in the shooting of Jordan. First, Robinson maintains he withdrew the SK38 from his vehicle to "bluff" Jordan down as a means of self defense. Second, Robinson alleges that as a result of the attempted "bluff," the SK38 accidently discharged and struck Jordan. It is readily apparent from the record and supported, in part, by the testimony of Robinson, that Jordan neither had a weapon nor displayed any hostile or aggressive movements that could have reasonably been construed by Robinson as placing him in fear of death or serious bodily injury. Robinson testified that as Jordan walked aggressively towards him, Jordan said "What's up, nigger?" This was the extent of Jordan's statements and actions. In addition, Robinson testified that the SK38 was in proper working order and that to his knowledge the gun had never malfunctioned.
¶ 18. It is the well settled rule of this State that jury instructions that are unsupported by an evidence basis or that incorrectly states the law are not to be given to the jury. Perry v. State, 637 So.2d 871, 877 (Miss.1994); Dedeaux v. State, 630 So.2d 30, 33 (Miss.1993); Wilson v. State, 592 So.2d 993, 997 (Miss.1991). Without an evidentiary basis to support Robinson's theory the trial judge has the discretion to "refuse an instruction which incorrectly states the law, is without foundation in the evidence, or is stated elsewhere in the instructions." Murphy v. State, 566 So.2d 1201, 1206 (Miss.1990).
¶ 19. Without further evidentiary basis to support Robinson's theories of self-defense and accident, the instructions were properly denied. Simply saying that you shot in self defense or that the shooting was an accident in and of itself does not provide a defendant with an automatic right to instructions thereon. The defendant's testimony or other evidence must provide an evidentiary basis for the same. There was none here. The record reflects the whole of the instructions presented to the jury were a complete and accurate version of the law based upon the evidence produced at trial. Therefore, this assignment is without merit.

V.

THE LOWER COURT ERRED IN ALLOWING USE OF THE DEFENDANT'S YOUTH COURT RECORD IN SENTENCING THE DEFENDANT
¶ 20. Robinson maintains error by the trial judge in allowing the use of his youth court record during sentencing. In addition to Robinson's failure to cite any legal authority in support of this assignment of error, he has equally failed to devote a single sentence in his brief addressing the issue. It is well settled law in this State that an appellant is under the duty to provide authority and support of an assignment. Hoops v. State, 681 So.2d 521, 526 (Miss. 1996); Kelly v. State, 553 So.2d 517, 521 (Miss.1989); Brown v. State, 534 So.2d 1019, 1023 (Miss.1988); Harris v. State, 386 So.2d 393 (Miss.1980). The law is equally clear in this State "that failure to cite authority may be treated as a procedural bar, and we are under no obligation to consider the assignment." McClain v. State, 625 So.2d 774, 781 (Miss.1993) (citing Smith v. Dorsey, 599 So.2d 529, 532 (Miss.1992); See also Hoops, 681 So.2d at 526; Hewlett v. State, 607 So.2d 1097, 1106 (Miss.1992); Kelly, 553 So.2d at 521 (Miss.1989); Brown, 534 So.2d at 1023. Robinson's failure to cite legal authority, in conjunction with his failure to even address the issue in his brief has placed this Court in an arduous position of addressing an issue not properly presented before the Court. Therefore, further discussion is unwarranted as this assignment of error is procedurally barred.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF WAYNE COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND ORDER TO PAY RESTITUTION OF $3,061.69 IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*195 BRIDGES, C.J., McMILLIN, P.J., and COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE and SOUTHWICK, JJ., concur.